IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                           No. 97-40005-01-SAC

SHAWN BATTLE,
        Defendant.

MEMORANDUM AND ORDER

In receipt of a proposed order seeking relief pursuant to 18 U.S.C. § 3582(c)(2) based on amendments to the sentencing guidelines effective November 1, 2011,[1] the court directed counsel to file a motion that addressed some of the court's questions over the availability of the relief requested in the proposed order. The court also sought clarification of the parties' agreement on the order. After reviewing the defendant's motion and despite disagreeing with its characterization of the court's prior guideline application decisions and their binding nature under § 3582(c), the court will find the defendant eligible for sentencing relief and impose a sentence of 324 months.

The defendant has filed a formal motion requesting the court to find the defendant eligible for a § 3582(c) sentencing reduction and to

---

[1] *See* Fair Sentencing Act of 2010, Pub.L. No. 111–220, 124 Stat. 2372 (2010); U.S.S.G. § 2D1.1 (2011); United States Sentencing Commission, 76 Fed. Reg. 41,332 (July 13, 2011) (on retroactivity).

impose a new sentence of 262 months that takes off 98 months from the defendant's original sentence. (Dk. 343). The motion states that the government joins this request. As was explained to the parties in the email dated December 6, 2011, the court's question over what was the parties' agreement behind this proposed order arose from the differences between the email that accompanied the original series of Amendment 750 orders received by this court in October and the email that accompanied this order. The defendant's motion clears up the court's confusion in this regard.[2]

The defendant's motion represents that at the time of sentencing the court's "only specific finding of drug quantity" was "1.5 kilograms of crack cocaine" and posits that this purported finding "is determinative" in this § 3582(c) proceeding. (Dk. 353, p. 2). The court concludes that the record does not sustain the defendant's arguments for a single and determinative drug-quantity finding by the court. Rather, the court's general findings of drug quantity and the evidence of record support additional calculations necessary for applying the guideline amendments involved in this § 3582(c) proceeding.

At the time of the defendant's original sentence, the Sentencing

---

[2]It is also the court's understanding that in this case the United States Probation officer involved in these matters has not necessarily concurred with the disposition in this case but has agreed "the numbers are correct." The difference here is that the officer recognizes there is a remaining question over the court's drug quantity determination in the original sentencing.

Guidelines Drug Quantity Table set the highest base offense level of 38 for a drug quantity of cocaine base of 1.5 kilograms or more. The presentence report ("PSR") prepared in this case recommended that "<u>at least</u> 1.5 kilograms of cocaine base is directly attributable to the defendant." (PSR, ¶ 45) (underlining added). As this finding suggests, the PSR on closer reading does not purport to calculate and recommend a finding as to the total quantity of drugs distributed by the conspiracy over the nearly five-year period charged in count one that would be the relevant conduct of the defendant, as the conspiracy's director and manager, under the guidelines. Instead, the PSR settles on recommendations sufficient to meet the highest quantity of cocaine base that would carry the top base offense level in the drug quantity table. The PSR sets out the testimony and statements of several co-defendants or co-conspirators regarding their respective involvement in the conspiracy. It recounts the co-conspirators' estimates of total quantities handled by them individually during their time in the conspiracy. It also summarizes what these witnesses said about their regular individual trafficking activities in the conspiracy. It compared the estimated totals against the totals calculated from the regular trafficking activities. Without adding together any of the totals established through each of the co-conspirators, the PSR concluded that each respective total cleared the 1.5 kilogram threshold and that the evidence of record sustained a base offense level of 38.

At the time of sentencing, the court read and applied the PSR consistent with the approach and conclusions made in it. This is apparent in the written findings attached to the defendant's current motion, in particular the underlined references:

> Based upon the evidence heard by this court at trial, the court is led to the inescapable conclusion that well over 1.5 kilograms of crack cocaine was distributed by this conspiracy and that this amount was foreseeable to Shawn Battle as the head of that conspiracy. *Therefore the full 1.5 kilograms is properly attributed to the defendant.*
> First, the volume of drugs calculated in the PSI is consistent with the testimony of the defendant's coconspirators who testified at trial. From that evidence alone it is absolutely clear that persons operating at the defendant's direction or in concert with the defendant and other coconspirators were distributing substantial amounts of crack cocaine during the life of the conspiracy. <u>Anthony Timmons, Shera Johnson and Terrance Canteen each admitted that they had personally been involved in the distribution of over 1.5 kilograms while a member of this conspiracy. Even without adding those amounts together, well over 1.5 kilograms of crack cocaine was distributed in this case.</u> Second, the number of persons in the conspiracy, and the time, money and resources, such as telephones, pagers and apartments, used in distributing drugs circumstantially corroborates the court's conclusion that well over 1.5 kilograms of crack cocaine <u>(the highest quantity considered in the guidelines and consequently the highest base offense level)</u> was distributed through the defendant's narcotics network. Third, the observations and information collected by law enforcement officers independently corroborates the sizeable volume of crack cocaine distributed by the defendant or his cohorts.
> In short, the defendant's extensive criminal enterprise distributed substantial amounts of crack cocaine--<u>well in excess of 1.5 kilograms</u>--over a several year period.

(Dk. 343-1, pp. 5-7). The underlined references reveal the court's understanding of the PSR's limited approach, that is, to determine whether the evidence supports a quantity in excess of 1.5 kilograms and an offense level of 38. The court did not read the PSR as recommending that the court

4

should calculate the total quantity of drugs distributed under the conspiracy or under relevant conduct. The evidence at trial showed an "extensive criminal enterprise distribut[ing] substantial amounts of crack cocaine--well in excess of 1.5 kilograms--over a several year period," so there was no need to make a separate total quantity calculation. Fairly read then and now, the PSR did not calculate this total quantity of drugs but simply recommended that "at least 1.5 kilograms" was attributable to the defendant.

The defendant relies on the italicized sentence quoted above as the court's "only specific drug quantity finding." (Dk. 343, p. 6). When placed in its full and proper context, the italicized sentence is not the "specific drug quantity finding" touted by the defendant, and it is plainly not the "only" reliable and noteworthy quantity findings made at sentencing. As quoted above, this sentence follows and is expressly based on the court's "inescapable conclusion that well over 1.5 kilograms of crack cocaine was distributed." The italicized sentence, "the full 1.5 kilograms is properly attributed," is another way of saying that the defendant's objections asking for a quantity finding of less than 1.5 kilograms are overruled and that the evidence is sufficient for holding the defendant accountable for "at least 1.5 kilograms" and for imposing the top base offense level of 38. Any other construction of this sentence would be contrary to its immediate context and to a full reading of the court's other statements made in the written findings

5

and from the bench at sentencing.

The defendant contends that for the court "to change or refine the drug quantity" would be "outside the authority of § 3582(c)." (Dk. 343, p. 6). The arguments tendered for this position are not persuasive, for § 3582(c)(2) requires a sentencing reduction to be "consistent with applicable policy statements" and the policy statement at § 1B1.10(a)(2) precludes a reduction where the amendment "does not have effect of lowering the defendant's applicable guideline range." Even if he was attributed with 1.5 kilograms or more of crack cocaine at his original sentencing, a defendant "may not obtain a reduction in sentence where he was responsible for" more crack cocaine that results in no reduction under the new base offense levels. *United States v. Rollen*, 355 Fed. Appx. 166, 168 (10th Cir. 2009). The policy statement at § 1B1.10(b)(1) directs a court to "substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and . . . [to] leave all other guideline applications decisions unaffected."

There is nothing in the statute or policy statement that precludes this court from making an additional quantity calculation from findings and evidence adopted at the original sentencing. The Tenth Circuit approved of this approach in *United States v. Valdez*, 320 Fed. Appx. 863 (10th Cir. 2009):

Defendant countered that he had accepted responsibility for only 1.5

kg or more of crack and that court had made no specific drug quantity finding. . . .

After a motion hearing on June 27, 2008, the court determined that, when considered as a whole the factual basis in the plea agreement and the unobjected-to presentence report established that Defendant was responsible for more than 4.5 kg of crack . . . .

On appeal, Defendant argues the district court clearly erred by holding him responsible for 4.5 kg or more of crack where the court originally made no specific findings regarding drug quantity at sentencing. Instead, the court simply accepted Defendant's plea stipulation to a drug quantity of 1.5 kg or more of crack. The drug quantity was pegged at 1.5 kg because that was the threshold quantity in the sentencing guidelines at the time. <u>Therefore, the court had not need to make a separate, explicit quantity calculation.</u> To do so, it correctly relied upon its factual findings at sentencing. At sentencing, Defendant filed no objections to the facts in the presentence report, which were taken verbatim from the plea agreement. Consequently, the court adopted the factual statements in the presentence report as its own findings. It was proper for the court to rely at the § 3582 hearing on these findings it adopted at sentencing to calculate a drug quantity.

. . . .

In conclusion, because the court adopted as its factual findings at sentencing the statements in the presentence report showing Defendant was responsible for more than 4.5 kg of crack, the court correctly relied upon the higher quantity at the § 3582 hearing.

320 Fed. Appx. at 865-66. There have been no changes to § 3582(c)(2), to § 1B1.10(b)(1), or to the recognized interpretations of either provision that would suggest the Tenth Circuit would not approve applying this approach used in Amendment 706[3] cases to Amendment 750 cases.

At sentencing, the court incorporated as its "accurate" findings

---

[3] The court should note for the record that the defendant did not seek relief under § 3582(c)(2) for the two-level reduction under Amendment 706 that increased the cocaine base threshold to 2.8 kilograms for a base offense level of 38.

"the presentence investigation report" as "corrected by the court" in its rulings upon the defendant's objections. (Dk. 221, p. 18). As part of its quantity findings from the bench, the sentencing court said:

> It is clear to the court that Battle was the head of a conspiracy to distribute the crack cocaine, that Battle and his cohorts distributed small quantities of crack cocaine to numerous users on a daily basis, and that during the course of the conspiracy, well over 1.5 kilograms of crack cocaine was actually distributed and that such amount was foreseeable to the defendant in his role as organizer or leader. In short, although the members of the conspiracy did not keep meticulous records of the amount of their crack cocaine sales, it is clear from the number of persons participating in the scheme, the extensive utilization of the tools of the trade used to distribute the crack, and the admissions of the defendant's coconspirators that <u>several kilograms of crack cocaine</u> were actually distributed during the life of this conspiracy. The defendant's base offense level is properly calculated.

(Dk. 221, pp. 14-15) (underlining added). This finding of "several kilograms" is consistent with and supported by the findings in ¶¶ 43, 45 and 46 of the PSR that estimate 1.6 kilograms and 1.8 kilograms for a total of 3.4 kilograms. The court's finding of "several kilograms" and the comparable calculations in the PSR sustain a total quantity finding of at least 3.4 kilograms attributable to the defendant.[4] The defendant's motion recognizes that "[s]hould the Court use the full amount estimated by the PSR, the total of 3.4 kilograms still makes Mr. Battle eligible for a reduction

---

[4]The estimate of 1.6 kilograms in ¶ 43 accepted the defendant's statement on his absence and held him accountable for 40 weeks (200 x .10 x 2 x 40 = 1,600 grams or 1.6 kilograms). Thus, the defendant's current argument for reducing this amount by half is without merit.

of two offense levels." (Dk. 343, p. 9). The court agrees with this position and the resulting guideline range of 324 to 405 months. To be clear, in calculating the total quantity of 3.4 kilograms, the court is relying on findings that it adopted at sentencing and is following the procedure permitted in *Valdez*.

The defendant next asserts that "[h]ad he known that the amount could exceed 2.8, he likewise could have objected; however, at the time, any such objection was moot." (Dk. 343, p. 9). At his original sentencing, the defendant did object to the evidence and findings in the PSR for a drug quantity of 1.5 kilograms or more, and the court overruled those objections and made findings that are now relied upon in this § 3582(c)(2) proceeding. There is no procedural or substantive need for revisiting any of the defendant's quantity objections. Finally, there is no quagmire created by the court's sentencing finding that Canteen entered the conspiracy in 1995, as this finding was the same conservative approach taken in ¶ 43 of the PSR.

IT IS THEREFORE ORDERED that the defendant's motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) is granted insofar as the court finds the defendant eligible for relief under Amendment 750 and § 3582(c)(2) that results in a two-level reduction of his base offense level and a guideline sentencing range of 324 to 405 months. The court will impose a sentence of 324 months and enter a separate order accordingly.

Dated this 30th day of December, 2011, Topeka, Kansas.


 s/ Sam A. Crow
 Sam A. Crow, U.S. District Senior Judge